**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| JEAGR VENTURES, LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 21-cv-5900 |
| v. ) | |
| ) | Judge Robert M. Dow, Jr. |
| DOES 1-54, et al., ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

For the reasons stated below, Plaintiff Jeagr Ventures, LLC's motion for preliminary injunction [20] is denied. This case is set for a telephonic status hearing on May 18, 2022, at 9:30 a.m. Participants should use the Court's toll-free, call-in number 877-336-1829, passcode is 6963747.

**I.      Factual Background**

Plaintiff Jeagr Ventures, LLC is engaged in the business of manufacturing, distributing, and retailing survivalist products. At issue in this case is a specialized and patented paracord under the name SURVIVORCORD. [1, at 6.] According to the complaint, Plaintiff owns U.S. Patent No. 9,528,204 for "Survivalist Kermantle" ("the '204 Patent" or "Asserted Patent"), which was issued on December 27, 2016. [1, at 1, 3.] As counsel explained at the motion hearing, a paracord is basically a rope that can be disassembled into components, each of which has a separate utility. The invention of the '204 Patent specifically relates to a survivalist paracord having a kern including a braided core, a strand of wax-covered tinder, and a thread of fishing line. [1, at 3.] Claim 1 of the '204 Patent reads:

1. An improved kernmantle cord, the improvements comprising: an improved kern that includes: a plurality synthetic thread fibers braided into a parallel number of yarns that principally make up a core; a continuous full-length strand of jute twine fiber tinder waterproofed with paraffin-wax and added to said core; a continuous full-length strand of abrasion-resistant and clear and transparent nylon or fluorocarbon monofilament and added to said core; and an improved woven-thread mantle sheathing that is widened and supplemented along its continuous full-length and that accommodates additional threads that increase the diameter of the improved kern, and without significant gaps between threads in the mantle sheathing that would otherwise expose or allow parts of the improved kern to extrude, and environmental protection from abrasion and pliability of the improved kern.

[1, at 3.]

According to Plaintiff, Defendants in this action are 54 entities that together constitute a "cabal of foreign counterfeiters intent on exploiting unknowing online consumers" over "interactive commercial websites hosted on Amazon.com." [1, at 1-2.] Plaintiff brings a single count civil lawsuit alleging patent infringement under 35 U.S.C. § 271, asserting both literal infringement and infringement under the doctrine of equivalents.

On November 19, 2021, the Court granted an *ex parte* temporary restraining order [14], which it extended for 14 additional days on December 2, 2021 [see 18]. One day before the TRO was to expire, counsel appeared on behalf of four defendants, PSKOOK, WILDAIR, SURVIVAL PARACORD, and POWER PARACORD. [See 23.] The Appearing Defendants contested Plaintiff's motion for a preliminary injunction. Plaintiff and the Appearing Defendants worked out a stipulated asset restraining order [27] pursuant to which the terms of the TRO have been extended pending the resolution of the preliminary injunction motion as to these defendants. The preliminary injunction motion is now fully briefed [see 24, 31], and the Court held an oral argument on the motion as well [see 56].[1]

---

[1] A final default judgment [53] has been entered as to all remaining Defendants.

In support of its motion, Plaintiff filed a rather minimalist opening brief [21] in which it addressed the likelihood of success in a single paragraph. Relying on two declarations and various screen captures of the allegedly infringing websites, Plaintiff's brief leaves it to the Court to compare the patent to the web materials and decide whether infringement likely has taken place. Neither the brief in support of a preliminary injunction nor the longer memorandum filed in support of the original TRO order [see 9] provide much analysis of the controlling case law on direct infringement or the doctrine of equivalents.

In their response brief [24], Defendants frame the relevant legal issues, mounting a two-pronged opposition to Plaintiff's motion. Defendants first argue that the '204 Patent is vulnerable to being invalidated. Specifically, Defendants point to six references in the prior art, which they claim demonstrate that the '204 Patent was likely obvious upon its filing date of January 24, 2015. Defendants also contend that the devices they sell neither literally infringe the '204 Patent nor infringe under the doctrine of equivalents. In support of the former, Defendants focus on Claims 1, 9, and 10, pointing out various differences between their product and the limitations set out in the '204 Patent. In regard to the latter, Defendants draw the Court's attention to several ways in which the products in question can be distinguished from each other.

In its reply [31], Plaintiff resists Defendants' invalidity argument by questioning the accuracy and authenticity of the prior art cited by Defendants and noting the absence of any declaration by a person purporting to possess ordinary skill in the art (POSA). On the merits of the infringement claim, Plaintiff also notes the absence of a countervailing declaration from a POSA and Defendants' focus on a single listing from PSKOOK alone.

**II.    Legal Standard**

Section 283 of the Patent Act authorizes courts to issue injunctive relief "in accordance with the principles of equity to prevent the violation of any right secured by patent, on such terms as the court deems reasonable." 35 U.S.C. § 283.  A court's determination of whether to issue a preliminary injunction involves a two-step inquiry, with a threshold phase and a balancing phase. See *Whitaker v. Kenosha Unified Sch. Dist. No. 1 Bd. of Educ.*, 858 F.3d 1034, 1044 (7th Cir. 2017); *Vendavo, Inc. v. Long*, 397 F. Supp. 3d 1115, 1128 (N.D. Ill. 2019).  "First, the party seeking the preliminary injunction has the burden of making a threshold showing: (1) that he will suffer irreparable harm absent preliminary injunctive relief during the pendency of his action; (2) inadequate remedies at law exist; and (3) he has a reasonable likelihood of success on the merits." *Whitaker,* 858 F.3d at 1044; see also *Valencia v. City of Springfield*, 883 F.3d 959, 965 (7th Cir. 2018).  The likelihood of success and irreparable harm factors "are the most critical in a patent case, and a court may deny a motion for a preliminary injunction if 'a party fails to establish *either* of the[se] two critical factors.'"  *Pressure Specialist, Inc. v. Next Gen Manufacturing Inc.*, 469 F. Supp. 3d 863, 868 (N.D. Ill. 2020) (quoting *Reebok Int'l Ltd. v. J. Baker, Inc.*, 32 F.3d 1552, 1556 (Fed. Cir. 1994)).

If the movant successfully makes the required threshold showing, "the court must engage in a balancing analysis, to determine whether the balance of harm favors the moving party or whether the harm to other parties or the public sufficiently outweighs the movant's interests." *Whitaker*, 858 F.3d at 1044.  The Court "employs a sliding scale approach" to the balancing analysis; "[t]he more likely the plaintiff is to win, the less heavily need the balance of harms weigh in his favor; the less likely he is to win, the more need it weigh in his favor." *Valencia*, 883 F.3d at 966 (internal quotations marks and citation omitted).  "Ultimately, the moving party bears the

4

burden of showing that a preliminary injunction is warranted." *Courthouse News Service v. Brown*, 908 F.3d 1063, 1068 (7th Cir. 2018).

In addition, as counsel for Plaintiff acknowledged at the motion hearing, the evidentiary standard at this early stage of the case is relaxed in recognition of the compressed time frame in which the parties have had to marshal their factual presentations. See *University of Texas v. Camenisch*, 451 U.S. 390, 395 (1981) (explaining that given its temporary nature, "a preliminary injunction is customarily granted on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits"); see also *FTC v. Lifewatch, Inc.*, 176 F. Supp. 3d 757, 762 (N.D. Ill. 2016). For example, "hearsay can be considered in entering a preliminary injunction." *SEC v. Cherif*, 933 F.2d 403, 412 n.8 (7th Cir. 1991). In short, "evidentiary rules are relaxed at the preliminary injunction stage, and the Court has substantial discretion to hear and receive evidence intended to 'preserve the relative positions of the parties until a trial on the merits can be held,' whether or not that evidence complies with formal rules and procedures." *City of Evanston v. Northern Ill. Gas Co.*, 381 F. Supp. 3d 941, 949 (N.D. Ill. 2019).

**III.    Analysis**

The Court confines its analysis of the motion for preliminary injunction to likelihood of success because this factor is dispositive. See *Pressure Specialist*, 469 F. Supp. 3d at 868. "To establish a likelihood of success on the merits, a patentee must show that it will likely prove infringement of the asserted claims and that its infringement claim will likely withstand the alleged infringer's challenges to patent validity and enforceability." *Metalcraft of Mayville, Inc. v. The Toro Co.*, 848 F.3d 1358, 1364 (Fed. Cir. 2017). "[A] plaintiff cannot meet his burden where the accused infringer raises a substantial question as to infringement or invalidity." *Scholle Corporation v. Rapak LLC*, 35 F. Supp. 3d 1005, 1009 (N.D. Ill. 2014). As explained in this

section, Plaintiff is not entitled to a preliminary injunction based on the showing he has made thus far because Defendants have raised a substantial question as to both the validity of Plaintiff's asserted patents and whether the accused products actually do infringe the '204 Patent.

### A. Invalidity

Although a patent is presumed valid under federal law, "that presumption does not relieve the moving party in the preliminary injunction context from carrying its normal burden of establishing its reasonable likelihood of prevailing" on the merits. *Techtronic Indus. Co. v. Chervon Holdings, Ltd.*, 395 F. Supp. 2d 720, 729 (N.D. Ill. 2005). "Under 35 U.S.C. § 103, a claim is invalid as obvious 'if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill' in the relevant art." *Riddell v. Kranos Corp.*, 319 F. Supp. 3d 1071, 1092 (N.D. Ill. 2018). "[D]ifferences between the prior art reference and a claimed invention, however slight, invoke the question of obviousness, not anticipation." *Net MoneyIN, Inc. v. VeriSign, Inc.*, 545 F.3d 1359, 1371 (Fed. Cir. 2008). Obviousness is a question of law based on the underlying factual inquiries including: (1) the scope and content of the prior art, (2) the differences between the prior art and the claims, (3) the level of ordinary skill in the relevant art, and (4) any objective indicia of non–obviousness, such as commercial success, long felt need, and failure of others. *Crocs, Inc. v. Int'l Trade Comm'n*, 598 F.3d 1294, 1308 (Fed. Cir. 2010); see also *Campbell Soup Co. v. Gamon Plus, Inc.*, 10 F.4th 1268, 1275 (Fed. Cir. 2021) (citing *Graham v. John Deere Co.*, 383 U.S. 1, 17-18 (1966)).

If the alleged infringer "raises a substantial question of invalidity, the preliminary injunction should not issue." *Neutral Tandem, Inc. v. Peerless Network, LLC*, 2010 WL 11537593 at *4 (N.D. Ill. Mar. 30, 2010) (citing *Altana Pharma AG v. Teva Pharms. USA, Inc.*, 566 F.3d

999, 1005-06 (Fed. Cir. 2009). A substantial question arises if the alleged infringer convinces the court that that the patent is "vulnerable" to a successful challenge, which requires less proof than the clear and convincing showing necessary to establish invalidity itself. *Id.*; see also *Abbott Lab'ys v. Sandoz, Inc.*, 500 F. Supp. 2d 807, 817 (N.D. Ill. 2007), aff'd, 544 F.3d 1341 (Fed. Cir. 2008). If the alleged infringer shows that the patent is "vulnerable" the burden shifts back to the patentee "to show that the defense lacks substantial merit." *Id.* In other words, "[v]ulnerability is the issue at the preliminary injunction stage, while validity is the issue at trial." *Id.*; see also *Techtronic Indus. Co., Ltd. v. Chevron Holdings, Inc.*, 395 F. Supp. 2d 720, 729 (N.D. Ill. 2005) (at a preliminary injunction stage the district court does not resolve the validity question, but "rather assesses the persuasiveness of the challenger's evidence").

Here, the "challenger's evidence" includes six references which, Defendants believe, demonstrate that '204 Patent was very likely obvious upon its filing date of January 24, 2015:

- Reference 1: Fire Cord ParaCord Overview - October 27, 2014 (Exhibit A).
- Reference 2: PrepCord 550 Fishing Line Paracord Overview - May 5, 2014 (Exhibit B).
- Reference 3: Prep Cord vs Fire Cord - October 26, 2014 (Exhibit C).
- Reference 4: NEW survival jute & fishing line paracord Sgt knots - August 4, 2012 (Exhibit D).
- Reference 5: Outdoor Element - September 11, 2013 (Exhibit E).
- Reference 6: Squatchcord - September 16, 2014 (Exhibit F).

Plaintiff objects to both the quality and quantity of Defendants' evidence. As to quality, Plaintiff notes the absence of "any countervailing declaration of a person having ordinary skill in the art" of commercial paracord products. Defendants push back with the contention that "[t]he level of ordinary skill in the art is relatively low because people could easily make modifications to the strands of existing paracord designs." Defendants' point is well taken. In cases involving drug patents, for example, the POSA may be a chemist with a Ph.D. and substantial experience in a narrow field of medicine. See *Bone Care Intern., LLC v. Pentech Pharmaceuticals, Inc.*, 2010

7

WL 2266518, at *3 (N.D. Ill. June 4, 2010) (defining the POSA "as a person working in the field of kidney diseases who either possesses a medical degree and was Board certified in nephrology or endocrinology or possesses a Ph.D. in biochemistry and has at least two years of experience in the field of vitamin D drug discovery"). Here, by contrast, the product at issue is used by survivalists for basic emergency situations—the examples given at oral argument included starting a fire, catching a fish, and constructing a trap. And Plaintiff's POSA doubles as its lawyer. [See 9-2, at 4.] The Court does not doubt that experienced lawyers can compare a patented product with products sold by competitors and offer an opinion on the similarities and differences between the one and the others. But Defendants have an experienced patent lawyer, too. And the fact that his counterargument is encompassed within a brief alone, as opposed to a brief and a declaration claiming to be a POSA, does not detract substantially from the persuasiveness of the presentation given the relaxed evidentiary standards discussed above.

      Moreover, the question at this early stage is vulnerability, not validity full stop. And, here, Defendants have come forward with several reasons for at least wondering whether the '204 Patent supposedly novel features—waxed twine and transparent fishing line—can be found in the prior art. As noted above, a paracord functions like a Swiss-army knife, using fibers instead of blades. Those fibers may come in handy to start a fire or to catch a fish. Thus, certain elements of the paracord must be designed to function in the water, while other elements need to catch fire quickly and reliably. The references cited by Defendants, taken together, at least present a reasonable case in support of the proposition that everything claimed in Claim 1 of the '204 patent was disclosed prior to the date on which it was submitted. See *Campbell Soup*, 10 F.4th at 1275. Of course, the Court's view may change after the record is more developed and the parties have further developed their invalidity analyses. But based on the limited record and argument before it, the Court

concludes that Plaintiff cannot make a sufficient showing of likelihood of success because the '204 Patent is "vulnerable" to challenge on obviousness grounds. See *Pressure Specialist*, 469 F. Supp. 3d at 868.

**B.     Infringement**

Even if the '204 Patent were not vulnerable to an invalidity challenge, Plaintiff still would need to make a convincing showing on the merits of its infringement claim before a preliminary injunction could issue. To show likelihood of success on the merits for the purposes of a preliminary injunction, a plaintiff "must prove that success in establishing infringement is more likely than not." *Pressure Specialist, Inc.*, 469 F. Supp. 3d at 868-69 (internal citations omitted). To infringe, the accused device must embody every claim limitation in the patent or its equivalent. *Id*. A device literally infringes "if every limitation recited in the claim appears in the accused product." *Id*., at 871 (quoting *Jeneric/Pentron, Inc. v. Dillon Co., Inc.,* 205 F.3d 1377, 1382 (Fed. Cir. 2000)).

Here, again, Defendants raise a number of issues that cast in doubt Plaintiff's contention that Defendants' product literally infringes the '204 Patent. Two distinctions are most notable. First, the products used different kinds of tinder—jute twine versus flax. Second, the product described in Claim 1 has "clear and transparent nylon or fluorocarbon monofilament," while Defendants' product is made of an opaque polyethylene braid. Defendants also point to the absence of metal wire in their product, which stands in contrast to the requirement of Claim 9 that the patented product embody "a continuous length of metal wire" and "a plastic coating applied to the surface of the metal wire." Defendants also note that their product is listed as having only a 380-pound breaking strength, not "a 550-pound breaking strength" as set out in the claim 10 limitation for the '204 Patent. Taken together, Defendants have identified several respects in

which their product likely does not literally infringe Claims 1, 9, and 10 of the '204 Patent. And if an accused product does not include every limitation recited in the claim, it does not literally infringe. See *Minnesota Min. & Mfg. Co. v. Chemque, Inc.*, 303 F.3d 1294, 1300 (Fed. Cir. 2002).

A device that does not literally infringe may still infringe under the doctrine of equivalents ("DoE") if the differences are "insubstantial." *LoggerHead Tools, LLC v. Sears Holding Corp.*, 328 F. Supp. 3d 885, 903 (N.D. Ill. 2018). Generally, this requires a showing that "the accused product performs substantially the same function in substantially the same way with substantially the same result as each claim limitation of the patented product." *Id*. (quoting *Crown Packaging Tech., Inc. v. Rexam Beverage Can Co.*, 559 F.3d 1308, 1312 (Fed. Cir. 2009)). To infringe under the DoE, an "equivalent must be found for every limitation of the claim somewhere in an accused device." *Corning Glass Works v. Sumitomo Electric U.S.A., Inc.*, 868 F.2d 1251, 1259 (Fed. Cir. 1989). Accordingly, relying on the doctrine of equivalents is disfavored at the preliminary injunction stage, as "[t]hat highly factual inquiry rarely comes clear on a premature record." *Pressure Specialist, Inc.*, 469 F. Supp. 3d at 871-72; see also *Mylan Institutional LLC v. Aurobindo Pharma Ltd.*, 857 F.3d 858, 866 (Fed. Cir. 2017) (observing that it is unusual for a court to grant a preliminary injunction based on infringement under the doctrine of equivalents).

Plaintiff cannot show that it is more likely than not that Defendants' product infringes claim 1 or 9 of the '204 patent under the doctrine of equivalents. As Defendants explain, many of the differences identified above at least arguably are significant, thus undermining any suggestion that the patented and accused products are functional equivalents. For example, the difference between an "opaque" and a "transparent" fishing line may affect the utility of that component. Similarly, the absence or presence of metal in the respective products may be significant, as metal is both a conductor and a potential antenna.

**IV.     Conclusion**

For the reasons stated above, Plaintiff Jeagr Ventures, LLC's motion for preliminary injunction [20] is denied. This case is set for a telephonic status hearing on May 18, 2022, at 9:30 a.m. Participants should use the Court's toll-free, call-in number 877-336-1829, passcode is 6963747.

Dated: May 9, 2022

_____
Robert M. Dow, Jr.
United States District Judge